**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

In the Matter of:

| | |
|---|---|
| Susan M. Shaffer, | Case No. 10-01926-als7 |
| Debtor | Chapter 7 |
| Susan M. Shaffer, | Adv. Pro. 10-30109-als |
| Plaintiff | |
| v. | |
| United States Department of Education, Iowa Student Loan Liquidity Corporation, | |
| Defendants | |
| Educational Credit Management Corporation, | |
| Intervenor-Defendant | |

**MEMORANDUM OF DECISION**
**(date entered on docket: December 1, 2011)**

COURSE OF PROCEEDING

Susan M. Shaffer ("Debtor" or "Plaintiff") filed a voluntary chapter 7 proceeding on April 15, 2010. She commenced this adversary proceeding on July 23, 2010 seeking discharge of her student loan obligations pursuant to 11 U.S.C. section 523(a)(8) (2011). Named Defendants included the United States Department of Education ("DOE") and Iowa Student Loan Liquidity Corporation ("ISLLC"). A Motion to Intervene was granted as to Education Credit Management Corporation ("ECMC"). (Collectively "Lenders"). Trial on the complaint was conducted on September 1, 2011. The Debtor was represented by Steven G. Klesner. ECMC was represented by Brooke S. Van Vliet. Craig P. Gaumer was present on behalf of the

DOE. Appearing as counsel for ISLLC was Matthew C. McDermott. The matter is now fully submitted. The court has jurisdiction of these matters pursuant to 28 U.S.C. sections 157(b)(1) and 1334. Upon review of the evidence and the parties' briefs, the following findings of fact and conclusions of law are entered by the Court pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. For the reasons set forth herein, the Debtor is granted a discharge of her student loan obligations based upon undue hardship.

FACTS

The Debtor began her college education as a freshman at the University of Northern Iowa in Cedar Falls. At the end of her first year, she returned to Iowa City, Iowa to be closer to her family, and in August of 1995 she became a student at the University of Iowa ("U of I"). She attended the U of I as both a full-time and part-time student until 2002 when she received a Bachelor of Arts degree in Psychology. She also attended Kirkwood Community College at various intervals to obtain pre-pharmacy credits and to remain qualified under her parent's health insurance coverage. Since her mid-teens, the Debtor has been challenged by mental health conditions, including eating disorders, depression, self-harm and anxiety. Consequently, her higher education has been impacted as demonstrated by a delay in obtaining her bachelor's degree and a low grade point average which resulted in three semesters being removed from her academic record at the U of I. Shaffer enrolled as a full-time student at the Palmer College of Chiropractic Medicine ("Palmer") in Davenport, Iowa in March 2007. She left this program in June 2008, prior to completing her degree. During this time, her moods affected her decisions, but not her grades. The Debtor explained that her primary reason for leaving her dream of becoming a chiropractor was due to the fact that she realized that she would never be able to

repay her outstanding student loans. She claims that even with the benefit of hindsight she would make the same decision today.

To fund her education, the Plaintiff obtained loans which now total approximately $204,525. Not including current interest accruals, the DOE is owed $57,489.11; ECMC is owed $47,900; and ISLLC is owed $99,136. At various intervals, payment deferments have been granted to the Debtor.

After leaving Palmer, Shaffer returned to Iowa City to live with her mother. She became employed at the U of I in the Women's Health Clinic in November 2008. Fearing she would be laid off by the U of I, she sought other employment. In August 2009, she began working as an Accounts Receivable Specialist at Precision Revenue Strategies ("PRS"). Plaintiff's duties required her to contact insurance companies to resolve claims. The job was stressful, and Shaffer began to experience medical issues which resulted in two leaves of absence and hospitalization for depression, for which she received disability insurance payments.

Believing she would be terminated at PRS, the Plaintiff voluntarily left this job. To meet her living expenses, Shaffer worked at temporary employment, cashed in retirement funds, utilized the disability insurance payments and accepted contributions from family members. At the time of trial, she had again obtained employment at the U of I as a Clerk III for which she will receive 90% of a full-time salary of $26,975 plus pro-rated benefits.

DISCUSSION

Treatment of student loans in a bankruptcy proceeding is governed by 11 U.S.C. section 523(a)(8), which provides in relevant part, that educational loans or those made, insured or guaranteed by a governmental unit are not discharged unless an undue hardship for the debtor or debtor's dependents is demonstrated. "The policy of this provision [is] clear. Congress

intended to prevent recent graduates who were beginning lucrative careers and wanted to escape their student loan obligations from doing so." Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554 (8th Cir. 2003). A debtor bears the burden to prove undue hardship by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 289-91, (1991). The concept of "undue hardship" is not defined by the bankruptcy code. The Eighth Circuit has adopted an analysis involving the totality of a debtor's circumstances[1] for the purpose of determining undue hardship. See Walker v. Sallie Mae Servicing Corp. (In re Walker), 650 F.3d 1227, 1230 (8th Cir. 2011); In re Long, 322 F.3d at 554; Andrews v. S. D. Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702, 704 (8th Cir. 1981); Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund), 440 B.R. 168, 171 (B.A.P. 8th Cir. 2010). Undue hardship can be substantiated by a showing of a disability that prevents meaningful employment or by a verified inability to pay based upon income and living expenses. Three areas of inquiry are relevant to the analysis: "(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case." In re Long, 322 F.3d at 554. Each of these factors is addressed below.

I.      Past, Present and Future Financial Resources

Plaintiff's earnings over the past five years, as reflected by her tax filings, ranged from $1,480 in calendar year 2008 to $31,977 in calendar year 2009. In some years, she has supplemented her income by cashing in retirement funds. Shaffer's compensation was highest at PRS where she left voluntarily due to stress that exacerbated her mental health symptoms, her concern that she would be terminated because of her medical absences, and her inability to meet

---

[1] Rejecting the more restrictive three prong test set forth in Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395 (2nd Cir. 1987).

the employer's required daily quotas. Not including her income at PRS, when gainfully employed she has consistently earned an average of $26,049 annually.

In the past, the Plaintiff has sought employment with various health care providers. She has not been successful in obtaining interviews or positions outside of the U of I where she has worked in three different departments as a Clerk III. Shaffer readily admits that she likes working at the U of I. In her current employment, she has health care benefits which allow her to obtain medication and access counseling services. She is able to perform her duties, and unlike during her previous experience at PRS, she has not manifested significant mental health symptoms. Upon questioning, the Debtor was asked if advancing to a Clerk IV position was possible which would increase her annual salary to $34,000. Shaffer testified that she has made application for Clerk IV jobs and does not qualify for advancement to a Clerk IV position due to lack of supervisory experience. At this time, it appears unlikely that there is an opportunity for meaningful advancement at the U of I. In January 2012, she will qualify for a merit pay increase, although there is no information as to its amount, and at some level, increases are capped.

II.     Reasonable Living Expenses

Monthly expense information was provided by Shaffer as part of the discovery process. At trial, a review of her expenses for calendar year 2010 were discussed and revised. She resides in a mobile home owned by her father, for which she pays the monthly lot rent of $310 and property taxes. Monthly lot rent is increasing by $10 in October 2011. The Debtor's other monthly expenses include: utilities $150; cell phone and internet access $109; automobile and renters insurance $104; transportation costs $100; food $400; medical and dental expenses $100; and recreation $75. A category for other regular expenses that includes personal care,

housekeeping supplies, home maintenance, furnishings and pet care is listed in a monthly amount of $300. Although this category could be identified as a possible source of funds for some payment on the student loans, to the extent it contains a reserve for unanticipated expenses that may not occur on a regular monthly basis, the amount is neither unreasonable nor extravagant. The Debtor owns a 2002 Buick, has discontinued her cable television, and has allotted the amount of $600 annually for clothing. In reviewing her budgeted expenses, I agree with the Debtor that she lives frugally.

At trial, ECMC pointed to several months where the Debtor spent money eating out and shopping at retail stores. An average over a three-month period was utilized in making this point. However, the cited expenditures do not appear to constitute a consistent spending pattern. No other similar examples were provided by ECMC even though numerous monthly bank statements were admitted into evidence. During the months that this spending occurred, the Debtor testified that she had received funds from her retirement account and gifts from family.

Although speculation as to increased future expenses is not appropriate in determining undue hardship, it is not unlikely that at some point the Debtor may be required to purchase a different vehicle, or in the event her father returns from out of state she may also be required to find a new residence. See Educ. Credit Mgmt. Corp. v. Jesperson (In re Jesperson), 571 F.3d 775, 780 (8th Cir. 2009). Upon the occurrence of either of these events, it is probable that the Debtor's monthly expenditures will increase in some amount. Based upon the evidence, it is doubtful that Shaffer will experience a substantial decrease in her overall monthly expenses in the foreseeable future.

"There is no precise formula for, or statutory definition of, what constitutes a "minimal standard of living." Brown v. Am. Educ. Servs., Inc. (In re Brown), 378 B.R. 623, 626 (Bankr.

W.D. Mo. 2007). "To be reasonable and necessary, an expense must be 'modest and commensurate with the debtor's resources.'" In re Jesperson, 571 F.3d at 780 (citing In re DeBrower, 387 B.R. 587, 590 (Bank. N.D. Iowa 2008)). Adjustments to living expenses may be required to permit payment on student loans, however, a debtor is not required to live in abject poverty to demonstrate an undue hardship. In re Brown, 378 B.R. at 626 (citing Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley) 300 B.R. 813, 818 (N.D. Fla. 2003)). "A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment." Id. In this case, after allowing for withholding[2] and her living expenses, Shaffer's total disposable income is less than $100 monthly.

III. Additional Relevant Facts and Circumstances

To analyze this portion of the totality of a debtor's circumstances, assistance and guidance is found under a number of factors that may include:

> (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness.

In re Brown, 378 B.R. at 626-67 (citing VerMaas v. Student Loans of N.D. (In re VerMaas), 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); Morris v. Univ. of Ark., 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002)). While these items are helpful, some are duplicative of the totality of the circumstances test and not all may be relevant to the facts of a specific case. See Hangsleben v.

---

[2] According to her 2010 tax returns, the debtor has not engaged in over-withholding which could result in skewing her monthly disposable income and could result in a substantial refund.

United States of America (In re Hangsleben), No. 10-30178, Adv. No. 10-7018, 2011 WL 2413340, at *6 (Bankr. D.N.D. June 10, 2011).

There is no dispute that Shaffer suffers from diagnosed mental health issues, including unspecified eating disorders, depression (bi-polar) and anxiety. The Lenders argue that Shaffer does not suffer a disability, permanent or otherwise, which prevents her from working or earning a living.[3] The Plaintiff admits that she has not been terminated from employment due to a disability, that she has not been told she is unable to work due to her medical conditions, and that she does not qualify for social security disability or Medicaid. However, the record is equally clear that Shaffer suffers from diagnosed mental illness which has affected her education and employment performance, that she has routinely and consistently sought medical treatment and taken prescription drugs for her symptoms, and that her symptoms have existed in some form for eighteen years. Incapacity (or disability) is only one of the enumerated items to be considered as additional relevant facts. There is no requirement that a debtor prove qualification for disability benefits or be completely unable to work due to a disability in order to be successful in demonstrating an undue hardship. To require such a showing would render the first two factors of the totality of the circumstances test completely irrelevant. In Shaffer's situation, her health issues are not debilitating. But based upon her employment and job search history, her ability to gain employment in a position that will meaningfully increase her annual income is not foreseeable.

In Jesperson, the Eighth Circuit identified a debtor's ability to make payments under the Income Contingent Repayment Program as a relevant factor under the totality of the circumstances. Specifically the Court stated: "[A] student loan should not be discharged when

---

[3] ECMC additionally argues that a finding of undue hardship is not justified based upon a debtor's sympathetic circumstances.

the debtor has 'the ability to earn sufficient income to make student loan payments under the various special opportunities made available through the Student Loan Program.'" 571 F.3d. at 781 (citations omitted).

Debtor has not made any payment on the loans with the DOE. Nor has she requested administrative relief, although she is aware that an income based payment plan is available. Similarly, Shaffer is also aware that an income contingent repayment plan ("ICRP") is an option with ECMC. Some payment on the debts owing to ISLLC (and perhaps ECMC) have been made, but the amounts are not substantial. She has been granted deferments on these loans, but was denied her most recent requests for economic deferment. ISLLC has been unwilling to lower her interest rate or negotiate payments and does not offer income contingent repayment plans for the loans provided to the Plaintiff. A graduated payment plan is available which would begin with a monthly payment of $287 and increase to over $500 monthly within a given period of time.

The Debtor admits that she has not agreed to enter into any repayment plans offered by the DOE or ECMC. Her reasoning is that without knowing the total amount she would owe for all her loan obligations combined she is uncertain whether she could actually make the required monthly payments to each Lender. According to information provided by the Lenders, the total monthly payment under their available programs totals $614 (DOE estimated at $180; ECMC $147; ISLLC $287). Based upon her current income and expenses, the Plaintiff is unable to meet even the combined lower monthly payment obligations to the Lenders.

## CONCLUSION

This is not a case where a disability or physical condition precludes gainful employment. This is also not a case where the debtor has a lack of some skills to obtain employment.

However, it appears that Shaffer has been unable to be employed in the area of her undergraduate degree, does not have the requisite management experience to obtain higher paying employment, and does have medical conditions that impact her ability to perform in stressful environments. These facts taken as a whole do not result in a finding that the Plaintiff's income limitations are "self-imposed." See Sederlund v. Educ. Credit Mgmt. Corp. (In re Sederlund), 440 B.R. 168, 175 (B.A.P. 8th Cir. 2010) (court not discharging student loans when debtor's income limitations were self-imposed). While Debtor's employment and education decisions may not have been objectively reasonable, the fact remains that even under the available payment options, Shaffer does not have the ability, based upon her education and employment history, to make payments on the student loans and maintain a minimal standard of living.

IT IS HEREBY ORDERED:

1. That the Plaintiff has established an undue hardship and the student loans owing to the DOE, ECMC and ISLLC are discharged.

2. The Parties shall bear their own costs.

3. Judgment will enter accordingly.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding